VANCE, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority opinion to the extent that it affirms rejection of the contention that the district court was bound by the parties’ attorneys’ fee agreement. I respectfully dissent from its affirmance of the lower court’s computation of the fee award. Because I agree that the case may be important as precedent, I feel constrained to record the basis of my dissent.
*337 We express commitment to a liberal application of its attorneys’ fee provisions in order to “ ‘make sure that Title VII works.’ ” Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974); Rowe v. General Motors Corporation, 457 F.2d 348 (5th Cir. 1972); Long v. Georgia Kraft Co., 455 F.2d 331 (5th Cir. 1972). The idea of “citizen enforcement” of the Act is a sound one. Properly represented, private parties can accomplish more toward enforcement of Title VII than an army of government lawyers — without unnecessary burden or expense to the taxpayers. It is in this context that district courts are called on to set fees that are reasonable.
The district court properly looked to Johnson v. Georgia Highway Express, Inc., supra, for guidance in arriving at a reasonable fee, but it misapplied Johnson’s guidelines to reach an unreasonable result.
The court below stated that under Johnson the necessary starting point is the time expended by counsel. I agree that this is a permissible starting point.[1] The district court found that fees for cases filed in federal court in Houston, Texas average $75.00 per hour. Partners in large firms charge a minimum of $90.00 per hour for such cases and associates command an hourly rate in the $40.00 to $75.00 range. According to the district court’s computation, the award here was approximately $50.00 per hour.[2]
The plaintiff brought this class action against a national corporation defended by a large and distinguished Houston firm. Plaintiff’s counsel achieved a result under which it was agreed that defendant’s Houston facility was to be enjoined from all future sex discrimination, and in addition to attorneys’ fees all back wages claimed were to be paid to members of the class.[3] By any reasonable criteria the result must be judged to be quite impressive.
The most significant flaw in the trial court’s award, however is not its failure to compensate an impressive result appropriately but its apparent failure to give meaningful consideration to the contingent aspect of counsel’s compensation. It is here that adherence to the hourly rate approach crosses the line between reasonable and unreasonable. If plaintiffs had not prevailed, there would be no compensation at all. The plaintiffs did prevail but the district court still awarded less than the established hourly rate for federal court litigation in Houston in non-contingent cases. Will competent and successful trial attorneys accept employment in a complex Title VII case if this is the standard by which fee awards *338 are to be computed in the Southern District of Texas? If the attorney loses the case no fee is awarded; if the attorney wins the case the award is almost, but not quite, equal to the established hourly rate which prevails in non-contingent cases. What this says to me and what I am afraid it will inevitably say to the bar in that district is that attorneys’ fees awarded in Title VII cases are so miserly that successful attorneys cannot afford to handle them. The chilling potential on suits brought to enforce the Act is self evident.

. Johnson, supra at 717, says that time expended is “a necessary ingredient to be considered,” not “the necessary starting point.” Even so, if mechanically applied, the hourly rate approach almost inevitably leads to an unsatisfactory result in this type of litigation. This method of compensation — which equates professional services to those of laborers and mechanics— frequently has little or no relationship to the value of the services performed in anything but the most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort. Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation. Notwithstanding its limitations, I am reconciled to the reality that the hourly rate approach will remain with us and is properly considered in the search for compensation that is reasonable.

. This is the average hourly rate the court decided to be appropriate for Mrs. Nelkin. Plaintiff was represented by a husband-wife team. The case was begun by Mr. Nelkin but taken over by his wife when she first entered the firm. The district court penalized Mrs. Nelkin because of her relative inexperience in determining an appropriate hourly rate. The weakness of mechanical application of an hourly rate was thus magnified. In Johnson this court said:
If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar. Johnson, supra at 719.

. Ironically plaintiffs counsel might have fared better had she not recovered any back wages at all. The smallness of the dollar award tends to obscure the importance of the injunctive relief. Even though the amount was small plaintiffs counsel was successful in negotiating an agreement for a facility-wide injunction against discrimination and recovered all of the back wages due members of the class.